**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| DISABILITY RIGHTS MARYLAND, INC., | ) | |
| 1500 Union Ave. | ) | |
| Suite 2000 | ) | |
| Baltimore, MD 21211, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. ___-cv-_____ |
| v. | ) | Judge _____ |
| | ) | |
| DR. LAURA HERRERA SCOTT, in | ) | |
| her official capacity as Secretary, | ) | |
| MARYLAND DEPARTMENT OF HEALTH, | ) | |
| 201 W. Preston Street | ) | |
| Baltimore, MD 21201-2399, | ) | |
| | | |
| SERVE ON: | | |
| Attorney General Anthony G. Brown | ) | |
| Office of the Attorney General | | |
| Civil Division | ) | |
| civil_service@oag.state.md.us, | | |
| | ) | |
| MARYLAND DEPARTMENT OF HEALTH, | ) | |
| 201 W. Preston Street | ) | |
| Baltimore, MD 21201-2399, | ) | |
| | ) | |
| SERVE ON: | | |
| Attorney General Anthony G. Brown | ) | |
| Office of the Attorney General | | |
| Civil Division | ) | |
| civil_service@oag.state.md.us, | | |
| | | |
| *Defendants*. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Disability Rights Maryland, Inc., by its attorneys, for its Complaint for

Declaratory and Injunctive Relief against Defendants Dr. Laura Herrera Scott in her official

capacity as Secretary, Maryland Department of Health, and the Maryland Department of Health, alleges upon personal knowledge, information and belief as follows:

## NATURE OF THIS ACTION

1.     More than 200 individuals charged by the State of Maryland with a criminal offense, but determined to be incompetent to stand trial (IST) and a potential danger to themselves or others due to their mental health, have been detained and are currently languishing in jails – some for weeks to months at a time.  Notwithstanding its unambiguously clear statutory obligation to do so, the Maryland Department of Health has continuously failed to commit these individuals to an appropriate health care facility for purposes of treatment, as ordered by Maryland courts.

2.     Disability Rights Maryland, proceeding on behalf of these IST detainees, brings this action seeking declaratory and injunctive relief premised upon a showing that their indefinite detention without treatment violates their established rights under the Constitution of the United States, the Constitution of Maryland, and other applicable federal laws.

## PARTIES

3.     Disability Rights Maryland (DRM), formerly known as the Maryland Disability Law Center, is the federally-mandated Protection and Advocacy organization for the State of Maryland, as part of the Protection and Advocacy system established by the U.S. Congress to protect the rights of persons with disabilities in each state.  42 U.S.C. §§ 10801, 15041.  DRM's responsibility to advocate for and protect the rights of individuals with mental illness specifically includes individuals in pre-trial detention.  *Id.* §§ 10802(3), 10805(a)(1)(B).  DRM also has a statutory right and responsibility to advocate for individuals with developmental disabilities under the Protection and Advocacy for Individuals with Developmental Disabilities (PADD) Program, created by the Developmental Disabilities Assistance and Bill of Rights Act of 1975,

Pub. L 94-103, 89 Stat. 486.  In its capacity as an advocate for these groups, DRM receives federal funds to support its mission.  42 U.S.C. § 15043(a)(2)(A)(i) (the "DD Act"); *see also* S. Rep. No. 103-120, at 39-40 (1993) ("[T]he current statute is clear that P&A systems have standing to pursue legal remedies.").

4.    DRM has standing to proceed in this action on behalf of IST detainees subject to indefinite detention attributable to the Maryland Department of Health's unlawful acts and/or omissions as alleged herein because:

a.    the individuals whose rights DRM seeks to protect are persons with disabilities within the State of Maryland;

b.    this action fits squarely within the framework of DRM's statutory purpose and mission to advocate for and protect the rights and interests of Maryland citizens with disabilities;

c.    DRM has the statutory right and obligation to pursue legal remedies on behalf of persons with mental illness pursuant to 42 U.S.C. § 10805(a)(1)(B), including specifically those in pre-trial detention, *id.* § 10802(3);

d.    DRM's Board of Directors and Protection and Advocacy for Individuals with Mental Illness (PAIMI) Advisory Council, each of which is composed of persons with disabilities and family members of persons with disabilities including mental illness, as required by federal law, have authorized and instructed DRM to protect the rights of detained persons with disabilities as a priority focus of its advocacy;

e.    In setting its priorities and activities, DRM seeks input from its constituents, including individuals with disabilities, as well as guardians and family members of individuals with disabilities; and

f.    DRM possesses the indicia of a membership organization that may undertake legal action on behalf of its members consistent with governing principles of standing law.

5.    Defendant Dr. Laura Herrera Scott is the Secretary of the Maryland Department of Health and has executive authority over the State's public health system and responsibility for carrying out the State's laws relating to public health and the policies, rules and regulations of MDH and assuring MDH's compliance with applicable federal laws.  Dr. Scott, who maintains an office at 201 W. Preston Street, Baltimore, MD  21201-2399, is sued in her official capacity. Her acts and/or omissions complained of herein were undertaken under color of State law.

6.    Defendant Maryland Department of Health (MDH) is the Maryland executive agency responsible for the State's public health system, including provision of competency restoration and treatment to individuals found IST and dangerous.  MDH is also responsible for the administration and operation of Maryland's five state hospitals and the Secure Evaluation and Therapeutic Treatment (SETT) facility, which serve individuals with disabilities found IST and dangerous.  MDH is required by Maryland Criminal Procedure Code Ann., Section 3-106(c)(2)(i), to transfer individuals found IST and dangerous to an MDH facility, within ten (10) business days of receiving the Court's order, for the purpose of competency restoration and treatment.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction of this action – brought pursuant to 28 U.S.C.

§§ 2201-02, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Pub. L. 101-336,

104 Stat. 327 (1990), Section 504 of the Rehabilitation Act, Pub. L. 93-112, 87 Stat. 355 (1973),

and Article 24 of the Maryland Constitution Declaration of Rights – under 28 U.S.C. §§ 1331,

1343 and 1367(a).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because all or a

substantial part of Defendants' acts and/or omissions giving rise to DRM's claims asserted

herein occurred within this judicial district.

## LEGAL FRAMEWORK

9.      Under Maryland's Criminal Procedure Code, state courts are empowered to

determine whether any criminal defendant who appears or claims to be incompetent to stand trial

due to either "mental disorder" or "mental retardation" is, in fact, IST.  Md. Code Ann., Crim.

Proc. § 3-104; *id.* § 3-106(2)(c).

10.      In order to make such a determination, the court may order MDH to examine the

defendant, after which MDH must conduct an examination and report its findings and

conclusions to the court within seven (7) days. *Id.* § 3-105.  If MDH concludes that the

defendant is IST, it must further opine as to whether, because of mental disorder or retardation,

the defendant would pose a danger to him or herself or the person or property of another if

released. *Id.*  The court may then make a finding of dangerousness on the basis of that opinion.

11.      If, after the MDH examination and a hearing, the court finds the defendant IST

but not dangerous to self or others, the court may set bail or authorize the defendant's release

upon recognizance, subject to at least annual hearings to determine whether the defendant has

been restored to competency or has become a danger to self or others. *Id.* § 3-106(b), (g).

12.     If, after the MDH examination and a hearing, the court finds the defendant IST and that he or she poses a danger to him or herself or others, the court must order the defendant committed to a healthcare facility designated by MDH.  *Id.* § 3-106(c)(1)-(2).

13.     MDH must admit the IST defendant to a designated health care facility "as soon as possible, but not later than 10 business days after [MDH] receives the order of commitment." *Id.* § 3-106(c)(2)(i).  No trial date is set for such defendant; rather, MDH is charged to develop a plan of treatment aimed at restoring mental competency and/or rendering the defendant no longer a danger to self or others.  *Id.* § 3-106(c)(3).

14.     A defendant committed to a designated health care facility for treatment under Section 3-106(c) must remain there until the court determines that he or she is either no longer IST, no longer a danger to him or herself or others, or that there is no substantial likelihood that he or she will be restored to competency in the foreseeable future.  *Id.* § 3-106(c)(1)(i).  In order to make such determinations, the court must hold a hearing at least once per year (as measured from the date of initial commitment) to review the status of the case.  *Id.* § 3-106(d).

15.     "Designated health care facilities" may refer to any of the various public and private residential facilities subject to the administrative oversight of the MDH; however, correctional or detention facilities, or units within corrections or detention facilities, are expressly excluded from the statutory definition.  *Id.* § 3-106(a)(2).

16.     In the event that MDH fails to admit a defendant adjudicated to be IST and dangerous within ten (10) business days of receiving notice of a court's determination, the court may impose "any sanction reasonably designed to compel compliance."  *Id.* § 3-106(c)(4).

17.     As originally enacted, Maryland Criminal Procedure Code Ann., Section 3-104 *et seq.*, did not specify a particular time period within which MDH was obligated to admit a

criminal defendant adjudicated to be IST and dangerous to a designated health care facility to commence competency restoration treatment.

18.    In *Powell v. Maryland Department of Health*, 455 Md. 520 (2017) ("*Powell*"), four criminal defendants found IST and dangerous in cases before the Circuit Court for Baltimore City brought suit, complaining that MDH's failure to commit them to a state hospital for treatment within one day of the court's determinations in each of their cases as ordered, resulting in periods of jail detention ranging from 12 to 36 days, violated both Section 3-106 of the Criminal Procedure Code and their rights to due process of law under Article 24 of the Maryland Declaration of Rights.

19.    The *Powell* plaintiffs argued that Section 3-106 implicitly authorized a state court, in determining IST, to set a deadline by which a criminal defendant adjudicated IST and dangerous was to be admitted to a health care facility for treatment, and that failure by MDH to meet that deadline, once established by court order, violated the statute.  This claim was ultimately rejected by the Court of Appeals (now the Supreme Court of Maryland), which found it "evident [that] nothing in the text of CP § 3-106(b) sets a deadline for admission, or authorizes the court to set one," in direct contrast to other provisions of the statutory scheme.  *See* 455 Md. at 543.

20.    The Court, however, did find potential merit in the plaintiffs' claim that subjecting them to detention in jail during a period of delay in MDH's fulfillment of its obligation to admit them to a health care facility for treatment could constitute a deprivation of their liberty interests in violation of their substantive due process rights, and remanded that issue for further proceedings in the lower courts.  *See generally id.* at 548-55.

21.     Following *Powell*'s definitive holding that Md. Code Ann., Crim. Proc. § 3-106 did not authorize courts to establish an enforceable deadline for the commitment of IST-adjudicated criminal defendants for purposes of treatment, the Maryland Legislature crafted and enacted into law Senate Bill 233 in April 2018, 2018 Md. Laws. Ch. 189 (S.B. 233) (enacted October 1, 2018), leaving no room for doubt regarding its intent in doing so.  Accordingly, S.B. 233 specifically amended Section 3-106(c)(2)(i) to provide that:

> If the court commits a defendant to the [MDH] under paragraph (1) of this subsection, *the [MDH] shall admit the defendant to a designated health care facility* as soon as possible, but *not later than 10 business days after the [MDH] receives the order of commitment*[.] (emphasis added).

The S.B. 233 Amendments also expressly clarified that "[d]esignated [h]ealth [c]are [f]acility does not include a correctional or detention facility or a unit within a correctional or detention facility."  *See* Md. Code Ann., Crim. Proc. § 3-106(a)(2).

22.     In prefatory language explaining its motivations in enacting S.B. 233, the Legislature plainly stated its concerns that "the unreasonable detention of defendants found incompetent to stand trial . . . outside a treatment facility is a serious public safety risk and a violation of the U.S. Constitution"; that "keeping potentially dangerous, seriously mentally ill defendants from treatment exacerbates their problems and violates their right to due process"; that "the crisis of delayed treatment for seriously mentally ill and incompetent defendants has been foreseeable for many years and well-documented"; and that "seriously mentally ill and incompetent defendants will continue to be unlawfully housed in detention centers unless the courts have authority to impose deadlines to enforce court orders[.]"  *See* 2018 Md. Laws. Ch. 189 (S.B. 233).

## RELEVANT FACTS

23.     The S.B. 233 Amendments to Md. Code Ann., Crim. Proc. § 3-106, which took effect as of October 1, 2018, were intended to eliminate the practice of indefinitely detaining IST-adjudicated defendants in jails and other correctional facilities; however, they have not had the desired effect.  Instead, MDH has continued to fail to execute on its obligation to admit defendants into designated health care placements within the required 10-day period following it notification of courts' determinations that those defendants are both IST and dangerous.

24.     This persistent failure on the part of MDH to comply with Section 3-106 has been acknowledged by the Maryland courts.  *See, e.g.*, *Md. Dep't of Health v. Myers*, Nos. 1901 *et seq.*, Sept. Term 2022, Slip Op. (App. Ct. Md. Feb. 29, 2024) (in appeal challenging contempt orders imposed against MDH for violation of Section 3-106 in 14 separate instances involving IST determinations by the Circuit Courts of Anne Arundel County and Baltimore City, respectively, the Appellate Court observed that "[t]his case involves what appears to be a recurring problem . . . .").

25.     Upon information and belief, as many as 225 IST-adjudicated individuals who have been charged with committing crimes in the State of Maryland—but convicted of nothing—have been or are currently being held in jails or other detention facilities for periods of time far exceeding 10 business days from the date on which MDH was notified of their court determinations.  These defendants, fully entitled to the presumption of innocence under the U.S. Constitution, have been deprived of their liberty solely on the basis of their mental illness and a finding of potential dangerousness.

26.     While held in jail, these defendants endure a functionally indefinite detention, as though the S.B. 233 Amendments were never enacted.  They have no access to treatment plans or resources that might aid them in seeking to regain competency or become less dangerous, and

no means by which to demonstrate such recovery to the courts even if they were receiving treatment rather than just being warehoused. This practice directly contravenes the defendants' substantive due process rights under the Fourteenth Amendment, including the right to reasonably safe conditions of confinement; freedom from unreasonable bodily restraint; and such minimally adequate habilitation as reasonably may be required by these interests. *Youngberg v. Romeo*, 457 U.S. 307 (1982).

27.    The magnitude of this "recurring problem" is exacerbated, upon information and belief, by MDH's engagement in the practice of imputing a presumption of dangerousness based solely upon a finding of mental illness, rather than as a result of an individualized mental health assessment. This practice has caused a gross over-designation of IST defendants as dangerous by the courts, which generally defer to the recommendation of MDH in classifying defendants. Simply presuming that certain types of mental disorders effectively equate to dangerousness without an individualized determination constitutes discriminatory stereotyping and unnecessarily expands the scope and the impact of MDH's failure to comply with its basic legal obligations.

28.    The adverse consequences anticipated in this Complaint are not speculative. They occur routinely in the Maryland state justice system, impacting defendants from all walks of life, whose only common feature is their disability.

29.    The Circuit Court for Anne Arundel County issued a decision, dated December 5, 2024, in the case of *State of Maryland v. Wuilly Alejandro Sunun-Ajon*, Case No. C-02-CR-24-000010, resolving a contempt motion brought by the defendant against MDH based on its failure to admit him to a designated health care facility within ten (10) days of MDH's receipt of the

Court's order adjudicating him IST and dangerous.  As relevant to this Complaint, the Court

summarized the facts of the defendant's involvement with the criminal justice system as follows:

> [O]n January 5, 2024, the Defendant . . . was indicted in the Circuit
> Court for Anne Arundel County for *attempted first degree murder*
> and related offenses.  Defendant was incarcerated originally on
> December 9, 2023 and has remained at the Anne Arundel County
> Detention Center since that time.  On March 8, 2024, the
> Honorable Judge Stacy W. McCormack ordered that the Defendant
> be evaluated by [MDH] for competency to stand trial.  [MDH] did
> not evaluate the Defendant until over three months later, and did
> not file a completed evaluation until June 27, 2024.  The evaluator
> opined that the Defendant . . . was incompetent to stand trial and
> dangerous due to a mental disorder.
>
> *              *              *
>
> At a hearing on July 8, 2024, and based upon the report in this
> record, this Court adjudicated Defendant incompetent to stand trial
> and a danger to self or the person or property of another, and
> accordingly, ordered that he be committed to a facility the [MDH]
> designates[.] . . .
>
> It is undisputed that the Defendant remains at the Anne Arundel
> County Detention Center . . . not having been placed within ten
> business days of the order signed by this Court committing him to
> the [MDH] for placement as discussed above.  The record does not
> reflect a request by the [MDH] to extend the time for placement or
> a notification that placement would not occur as ordered.

Opinion at 2-3 (emphasis in original).

30.    This recitation reflects that as of the date of the hearing on defendant's motion for

an order to show cause regarding the MDH's contempt – November 18, 2024 – *133 days* (*i.e.*,

more than four months) passed since the issuance of the Court's order that MDH place defendant

in a state health care facility for competency restoration treatment.  *Id.* at 13 n. 6.  In addition, the

Court found that as of the date of its decision, defendant was but one of fifteen (15) defendants at

the County Detention Center who had been adjudicated IST and dangerous and detained for

longer than ten (10) days after MDH's receipt of a court order requiring their placement by MDH

in an authorized facility for treatment, and that the total of such persons on a statewide basis was 218. *Id.* at 10, 13.

31.     Notably, over forty percent (40%) of the individuals who have been adjudicated incompetent to stand trial and are indefinitely detained, were charged with misdemeanor offenses or non-violent felonies, and these individuals could likely be restored to competency in the community with appropriate supports, as illustrated by the following examples:

32.     For instance, IST-adjudicated defendant D.L., a 45-year-old former school teacher, was arrested on September 13, 2023 during a manic episode.  Although their public defender promptly requested a competency evaluation, D.L. was instead detained at the Jennifer Road Detention Center, first in the general population and then for 132 days in administrative segregation, where their condition deteriorated severely without access to treatment or medications required by their condition.  Upon a second request for competency evaluation, D.L. was examined in their decompensated state and deemed IST and dangerous on January 30, 2024. Even after finally obtaining an IST designation, however, they languished in a detention center for nearly three more months before being transferred to a state psychiatric hospital owned and operated by MDH on April 25, 2024.  This transfer occurred only after D.L.'s attorney filed a motion for contempt against MDH.

33.     IST-adjudicated defendant P.B. is a 53-year-old small business owner experiencing attention deficit hyperactivity disorder, obsessive compulsive disorder, post-traumatic stress disorder, and bipolar disorder, who was arrested for a probation violation.  They were found IST and committed to the custody of MDH on June 21, 2024, but were never transferred to an MDH facility.  They spent 68 days in detention before being released to the community on August 29, 2024.  On May 2, 2024, the Wicomico County Circuit Court ordered a

competency evaluation for P.B.  P.B was subsequently adjudicated IST and dangerous on June 21, 2024, and the Court committed P.B. to the custody of MDH the same day.  While awaiting admission to a designated psychiatric facility following their commitment to MDH, P.B. was detained at the Wicomico County Detention Center for over two months in solitary confinement and on suicide watch, without clothing, a bed, recreation time, or visitors.  P.B. received only medication, but no counseling, mental health services, or any other competency restoration services.  Prior to their arrest, P.B. had been living with their sibling, received treatment from a psychiatrist, a therapist, and a social worker, and was in the process of seeking admission to a partial hospitalization program.  While in the detention center, P.B.'s condition degraded significantly in the absence of treatment and community support.  P.B.'s public defender filed a motion for contempt against MDH on July 9, 2024.  Despite P.B.'s worsening condition, P.B. was found competent to stand trial on August 29, 2024 and released to the community on bail conditions pending trial.  However, P.B.'s condition had deteriorated so significantly while in the detention center, that they required inpatient psychiatric treatment following their release from custody.

34.    IST-adjudicated defendant M.H., a 65-year-old individual with schizophrenia and multiple chronic medical conditions, including diabetes and severe asthma, was arrested in April 2024 and charged with misdemeanors following an altercation with a neighbor.  Initially released on bail, M.H.'s bail was later revoked on September 19, 2024, and they were found IST and dangerous and committed to the custody of MDH on the same day.  They have been detained since that time at the Baltimore Central Intake and Booking Center, waiting for transfer to an MDH facility.  M.H.'s detention has caused a significant deterioration in their physical and mental health.  While in detention, M.H. has not had access to necessary mental health treatment,

group therapy, and regular medications, as well as contact with family and other critical social supports.  Furthermore, M.H. has endured harsh and inhumane conditions at the detention center, confined to a cold cell during winter with only a short-sleeved uniform and access to cold water for showers.  Before their arrest, M.H. was an active participant in community mental health and day treatment programs, which provided essential services supporting their competency and well-being.  Having relied on these services for decades, the loss of these supports has further undermined M.H.'s ability to manage their mental health and reintegrate into the community.

35.     IST-adjudicated defendant J.H. is a 48-year-old who works at a local grocery store and is diagnosed with autism spectrum disorder and bipolar disorder.  In May 2022, J.H. was arrested and charged with a misdemeanor for second-degree assault when he resisted being taken to a hospital for an emergency psychiatric evaluation.  At the hospital, J.H. had an involuntary commitment hearing, but was found to not meet the criteria for involuntary civil commitment because any risk of dangerousness could be mitigated in a less restrictive environment and J.H. was subsequently released from the hospital on May 29, 2022.  Nonetheless, on June 24, 2022, J.H. was found IST and dangerous by an MDH-appointed forensic examiner based solely on J.H.'s history of mental illness and substance use, despite noting that J.H had no recent history of illegal drug use and no evidence of any dangerous behavior.  J.H. was detained in the Harford County Detention Center for 48 days prior to being admitted to an appropriate state psychiatric facility.  J.H. was discharged six (6) months later and was found eligible for community-based services after having been restored to competency and showing "no evidence of dangerousness."  J.H. then failed to appear for a pre-trial conference scheduled on August 8, 2023, due to J.H. being homeless at the time, causing J.H., to again be taken into custody, and another competency evaluation was ordered.  J.H. was evaluated by the

same MDH forensic examiner, who again found J.H. IST and dangerous based solely on J.H.'s mental illness, rather than behavior, rendering a dangerousness opinion that was identical to the opinion rendered in J.H.'s prior evaluation. As a result, J.H. was committed to MDH's custody on November 28, 2023. J.H. languished in jail for another 63 days without treatment before he was admitted to a designated state psychiatric facility on January 30, 2024. As a result of J.H.'s indefinite detentions and denial of community-based competency restoration and maintenance services, J.H. has experienced worsening mental health, homelessness, and an unnecessary delay in adjudicating his charges.

36.    IST-adjudicated defendant T.D. is a 42-year-old father of two who is diagnosed with bipolar disorder and schizophrenia. On May 6, 2024, T.D. was charged with burglary and theft-related offenses. An MDH forensic evaluator determined that T.D. was IST and dangerous, and the Court ordered him committed to the custody of MDH on May 20, 2024. The same day, the State dismissed T.D.'s felony charge. MDH's forensic examiner then issued an updated report, assessing T.D. as IST, but not dangerous, and recommended community services with supervision upon release. On June 18, 2024, the Court issued a second order releasing T.D. from MDH commitment and authorized T.D. for pre-trial release with community supervision. While T.D. sought out, applied for, and was found to be eligible to participate in community-based services and supports, MDH failed to create the plan of services required by Md. Code Ann., Crim. Proc. § 3-108(a)(3) to guarantee T.D.'s access to the necessary wraparound supports that were required to maintain his competency and secure T.D.'s pre-trial release with supervision. As a result, T.D. remained stuck in the detention center for more than five (5) months without access to appropriate mental health care or other competency restoration services. His charges timed out on November 7, 2024, and he was released from detention. While detained in the

Special Needs Unit at the St. Mary's County Detention Center, T.D. experienced worsening

mental health, never had the opportunity to regain competency, and was detained for the

maximum sentence on the charged offense, despite never being tried for or convicted of a crime.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**(Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

**(Against Defendant Laura Herrera Scott, in her official capacity)**

37.     DRM realleges and incorporates by reference, as though fully restated herein, the

allegations set forth in paragraphs 1 to 36.

38.     Under the Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution, neither the federal government nor any state government may deprive an individual

citizen of their liberty without due process of law.

39.     "When the prosecution of [a] criminal case cannot proceed because the defendant

is incompetent to stand trial, the defendant [cannot] be detained on account of the criminal

charge more than a reasonable period of time to determine whether there is a substantial

probability that the defendant will become competent in the foreseeable future." *Powell*, 455

Md. at 548-49, *citing Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

40.     Applying the principle established by *Jackson* that "[d]ue process requires that the

nature and duration of commitment bear some reasonable relation to the purpose for which the

individual is committed," to its analysis of the Maryland statutory scheme governing the

handling to IST-adjudicated defendants, the Court of Appeals stated in *Powell* as follows:

> After a court has made the requisite findings of incompetence and
> dangerousness, a criminal defendant is committed to MDH for [the] purpose of
> restoring the defendant to competence, while protecting the defendant (and
> others) from whatever danger the defendant's conditions poses.  *Any delay in
> transferring that defendant to a designated facility pursuant to a commitment*

16

*order must be reasonable in relation to the purpose of treating the defendant while protecting both the defendant and the public.*

455 Md. at 549-50 (emphasis added).

41.    In response to *Powell*, the Maryland Legislature, with constitutional due process concerns firmly in mind and expressly articulated, enacted the S.B. 233 Amendments, establishing – as a matter of law and public policy – that the period of permissible delay "in transferring [an IST-adjudicated] defendant to a designated facility pursuant to a commitment order" to avoid a due process violation is *no more than 10 business days* after MDH receives such order.  Md. Code Ann., Crim. Proc. § 3-106(c)(2)(i).

42.    MDH is regularly and routinely subjecting IST-adjudicated defendants to detention in jails and other correctional facilities in which such defendants receive no treatment for time periods exceeding – in most instances, by orders of magnitude – the 10-day post-notification time period mandated by Section 3-106.

43.    MDH has publicly asserted that it typically takes "about 53 business days" for IST-adjudicated defendants to be admitted to a designated health care facility to commence treatment.  *See* Alex Mann, *Inmates are left to 'languish': Jailed Marylanders needing psychiatric treatment may have to wait for months*, Baltimore Sun, July 28, 2024 (First Ed.).  That estimate almost certainly understates – substantially – the average period of time that individuals determined to be IST and dangerous are spending in jail detention between MDH's receipt of their commitment orders and the date on which they are eventually admitted to a treatment facility.  *See id.* ("[A]t recent court hearings, some defendants had spent six months or more behind bars before being transferred."); *see supra*, ¶¶ 29-36 (noting extended periods of detention experienced by our exemplar detainees).

44.     The lengthy periods of detention to which IST-adjudicated defendants have been and are being subjected by MDH bear no reasonable relationship to the objectives of restoring their competency or decreasing their dangerousness, and in fact may serve to *worsen* the defendants' mental health and capacity due to the prolonged absence of adequate treatment, harsh and/or hostile conditions inherent in a jail environment, and likelihood of solitary confinement as a result of behaviors attributable to mental illness and/or disability.

45.     Accordingly, in regularly and routinely subjecting IST-adjudicated defendants to detention in jails and other correctional facilities for prolonged and unreasonable periods of time, during which time these individuals are deprived of treatment, MDH has engaged and continues to engage in a widespread violation of affected detainees' substantive due process rights under the Fourteenth Amendment.

46.     Furthermore, MDH's actions have violated detainees' substantive due process rights by depriving them of reasonably safe conditions of confinement; freedom from unreasonable bodily restraint; and such minimally adequate habilitation as reasonably may be required by these interests. *Youngberg*, 457 U.S. 307.

## SECOND CAUSE OF ACTION
### (Article 24, Maryland Constitution – Declaration of Rights)

### (Against Defendant Laura Herrera Scott, in her official capacity)

47.     DRM realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 to 46.

48.     Article 24 of the Maryland Constitution's Declaration of Rights provides that the State may not deprive any citizen of their liberty without due process of law.

49.     "When the prosecution of [a] criminal case cannot proceed because the defendant is incompetent to stand trial, the defendant [cannot] be detained on account of the criminal

charge more than a reasonable period of time to determine whether there is a substantial probability that the defendant will become competent in the foreseeable future." *Powell*, 455 Md. at 548-49, *citing Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

50.    Applying the principle established by *Jackson* that "[d]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed," to its analysis of the Maryland statutory scheme governing the handling to IST-adjudicated defendants, the Court of Appeals stated in *Powell* as follows:

> After a court has made the requisite findings of incompetence and dangerousness, a criminal defendant is committed to MDH for [the] purpose of restoring the defendant to competence, while protecting the defendant (and others) from whatever danger the defendant's conditions poses. *Any delay in transferring that defendant to a designated facility pursuant to a commitment order must be reasonable in relation to the purpose of treating the defendant while protecting both the defendant and the public.*

455 Md. at 549-50 (emphasis added).

51.    In response to *Powell*, the Maryland Legislature, with constitutional due process concerns firmly in mind and expressly articulated, enacted the S.B. 233 Amendments, establishing – as a matter of law and public policy – that the period of permissible delay "in transferring [an IST-adjudicated] defendant to a designated facility pursuant to a commitment order" to avoid a due process violation is *no more than 10 business days* after MDH receives such order. Md. Code Ann., Crim. Proc. § 3-106(c)(2)(i).

52.    MDH is regularly and routinely subjecting IST-adjudicated defendants to detention in jails and other correctional facilities in which such defendants receive no treatment for time periods exceeding – in most instances, by orders of magnitude – the 10-day post notification time period mandated by Section 3-106.

53.    MDH has publicly asserted that it typically takes "about 53 business days" for IST-adjudicated defendants to be admitted to a designated health care facility to commence

treatment. Alex Mann, *Inmates are left to 'languish': Jailed Marylanders needing psychiatric treatment may have to wait for months*, Baltimore Sun, July 28, 2024 (First Ed.). That estimate almost certainly understates – substantially – the average period of time that individuals determined to be IST and dangerous are spending in jail detention between MDH's receipt of their commitment orders and the date on which they are eventually admitted to a treatment facility. *See id.* ("[A]t recent court hearings, some defendants had spent six months or more behind bars before being transferred."); *see supra*, ¶¶ 29-36 (noting extended periods of detention experienced by our exemplar detainees).

54.     The prolonged periods of detention to which IST-adjudicated defendants have been and are being subjected by MDH bear no reasonable relationship to the objectives of restoring their competency or decreasing their dangerousness, and in fact may serve to *worsen* the defendants' mental health and capacity due to the prolonged absence of adequate treatment, harsh and/or hostile conditions inherent in a jail environment, and likelihood of solitary confinement as a result of behaviors attributable to mental illness and/or disability.

55.     Accordingly, in regularly and routinely subjecting IST-adjudicated defendants to detention in jails and other correctional facilities for prolonged and unreasonable periods of time—and far in excess of the statutory period for commitment mandated by Md. Code Ann., Crim. Proc. § 3-106—MDH has engaged and continue to engage in a widespread violation of affected detainees' substantive due process rights under Article 24.

## THIRD CAUSE OF ACTION
### (Title II of the Americans With Disabilities Act—Disparate Treatment Claim)

### (Against Defendant Laura Herrera Scott, in her official capacity)

56.     DRM realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 to 55.

57.    MDH is a "public entity," and Defendant Herrera Scott is the Maryland official responsible for administering and supervising MDH, including its programs and activities related to behavioral health and competency restoration.

58.    The IST-adjudicated defendants who have been and/or currently are subject to detention in jail while committed to the custody of MDH and awaiting admission to a designated health care facility for treatment are "qualified individual[s] with a disability" – *i.e.*, mental illness and/or developmental disability– as defined by Title II of the Americans With Disabilities Act (ADA), Pub. L. 101-336, 104 Stat. 327 (1990).  *See* 42 U.S.C. § 12131(1)(A), (2).  IST-adjudicated defendants' mental illnesses or developmental disabilities substantially limit one or more major life activity, including their ability to live in the community without support.

59.    Competency restoration services are a program, service, or activity operated by a state or municipal government as defined under Title II of the ADA.

60.    Qualified individuals with disabilities may not, by reason of such disabilities, be subjected to discrimination by a public entity.  42 U.S.C. § 12132.

61.    As alleged above – *see supra* ¶ 27 – MDH, upon information and belief, has engaged and continues to engage in unlawful discrimination barred by the ADA by imputing a stereotypical determination of dangerousness to certain criminal defendants ordered to receive an MDH-administered mental competency evaluation based solely upon MDH's findings with respect to such defendants' mental illness rather than conducting an appropriate individualized assessment as to whether such defendants' behavior, in fact, poses a danger to themselves or others.

62.    This stereotyping practice subjects a disproportionate number of criminal defendants with mental illness to indefinite pre-trial detention in jails, when many such

defendants could instead attain pre-trial release with the provision of appropriate disability-related supports and services in the community.

63.     MDH's discriminatory presumption that mental disorders effectively equate to dangerousness without an individualized determination of actual dangerousness in each case increases the total number of criminal defendants adjudicated to be IST and dangerous and therefore requiring commitment for purposes of competency restoration treatment.  This practice necessarily multiplies the number of IST-adjudicated defendants subject to indefinite detention in jails or other correctional facilities while awaiting commitment.

64.     This over-designation of criminal defendants as "dangerous" results in further unnecessary institutionalization, "acting as criteria that screens out or tends to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying [community-based competency restoration services]," and such criteria is not necessary for the provision of competency restoration services.  Consequently, qualified criminal defendants with disabilities can *only* access competency restoration and maintenance services within a locked facility, despite the authorization provided in Md. Code Ann., Crim. Proc. §§ 3-106 and 3-108 for community-based competency restoration services and identifying a process for the provision of such services in the community.

### FOURTH CAUSE OF ACTION
### (Title II of the Americans With Disabilities Act—*Olmstead* Claim)

### (Against Defendant Laura Herrera Scott, in her official capacity)

65.     DRM realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 to 64.

66.     IST-adjudicated defendants are entitled to receive medical treatment for their mental disability in the least restrictive setting appropriate to their needs, including a medical

facility or community-based services where appropriate.  The State's treatment professionals have determined that placement in a community program is appropriate for IST-adjudicated defendants who are found non-dangerous.  IST-adjudicated individuals do not oppose transfer from detention centers to community settings.  Further, provision of community placement can be accommodated, taking into account the resources available to the State and needs of others with mental disabilities, as all component parts of competency restoration and maintenance are currently available as part of existing services offered in the Public Behavioral Health System and non-dangerous IST defendants with serious mental illness are eligible to receive community-based services.  Nonetheless, non-dangerous IST-adjudicated defendants are often excluded from their communities and instead, indefinitely detained in jails as a direct result of MDH's failure to furnish non-dangerous IST defendants with necessary services and supports that are identified in Md. Code Ann., Crim. Proc. § 3-108(a)(3).

67.     Public entities are prohibited from using criteria or methods of administration "that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(3)(i).  The indefinite jailing of IST-adjudicated defendants—simply by reason of their disability—violates Defendant's obligation to administer services, programs, and activities in the most integrated, least restrictive setting appropriate to the needs of qualified individuals with disabilities.  *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999).  Furthermore, "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment."  *Id.* at 601.  In over-designating criminal defendants as "dangerous," and denying access to appropriate supports that could mitigate dangerousness in the community, MDH violates the ADA by forcing those with

mental disabilities to relinquish participation in community life they could enjoy, given reasonable accommodations, while persons without mental disabilities may achieve access to an integrated community setting pre-trial without a similar sacrifice. *Id.*

### FIFTH CAUSE OF ACTION
### (Section 504 of the Rehabilitation Act)

### (Against all Defendants)

68.     DRM realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 to 67.

69.     MDH is a recipient of federal funds which are used to fund various types of mental health services, Medicaid, the development of crisis services and supports, and various other health-related programs.

70.     MDH's competency evaluation and restoration services are "program[s] or activit[ies]" as defined under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(b)(1)(A), requiring these programs to comply with Section 504's protections against discrimination.

71.     Qualified individuals with disabilities may not, by reason of such disabilities, be subjected to discrimination under any program or activity governed by the Rehabilitation Act. *Id.* § 794(a).

72.     As alleged above – *see supra* ¶¶ 27, 34-36 – MDH, upon information and belief, has engaged and continues to engage in unlawful discrimination barred by the Rehabilitation Act against certain criminal defendants who are required to undergo competency evaluations administered by MDH, by imputing stereotypical determinations of dangerousness based solely upon MDH's findings that certain defendants have a serious mental illness rather than assessing whether a defendant's conduct poses a danger to themselves or others.

73.    MDH also fails to assess whether any dangerous conduct used to justify detention could be mitigated with the provision of appropriate service, supports, and accommodations. Failing to consider whether such defendants could be rendered non-dangerous if provided with appropriate treatment, support, and services in the community, deprives these defendants of an equal opportunity to participate in and benefit from competency restoration services in the most integrated setting appropriate to an individual's needs, amounting to discrimination solely on the basis of disability.

74.    MDH's discriminatory presumption that certain types of mental disorders effectively equate to dangerousness without an individualized determination of actual dangerousness in each case multiplies the total number of criminal defendants adjudicated to be IST and dangerous, therefore requiring commitment for purposes of competency restoration treatment and deprives IST-adjudicated defendants of the opportunity to receive competency restoration services in the most integrated setting appropriate to their needs.

75.    MDH's failure to provide the community-based competency restoration and maintenance services specified in Md. Code Ann., Crim. Proc. § 3-108(a)(3), to non-dangerous individuals adjudicated IST, causes further unnecessary segregation of qualified individuals with disabilities in jails and hospitals.

**PRAYER FOR RELIEF**

76.    Plaintiff respectfully requests judgment in its favor on all counts, and relief from this Court as follows:

    a.    ADJUDGE and DECLARE MDH's practice of indefinitely detaining IST-adjudicated defendants in jails unconstitutional.

b.    ORDER MDH to provide the Court with a written plan for bringing itself
into compliance with all applicable laws within 30 days of the Court's
declaration that the practice of indefinitely detaining IST-adjudicated
defendants in jails is unconstitutional.  Such a plan shall identify how
MDH will ensure all IST-adjudicated defendants are transferred to a
designated facility within 10 days of commitment to MDH and continue to
maintain compliance with all applicable laws going forward.

c.    ORDER MDH to provide appropriate forensic psychiatric evaluations that
include a thorough assessment of (a) competency to stand trial; (b)
restorability, (c) present dangerousness, and (d) any accommodations or
community-based supports necessary to ensure people with disabilities are
afforded an equal opportunity to access and benefit from competency
restoration services and pre-trial release (*i.e.*, could any supports or
services mitigate a dangerousness finding to allow for pre-trial release and
community-based competency restoration?).

d.    ORDER MDH to provide competency evaluations with any
accommodations necessary for the defendant to have an equal opportunity
to participate in and benefit from the competency evaluation, including but
not limited to assistive communication devices, interpretation services,
medications, or other auxiliary aids/services.

e.    ORDER MDH to immediately reevaluate all pre-trial detainees in
detention centers who are awaiting transfer to MDH to assess whether
impermissible stereotyping or deprivation of accommodations contributed

to a prior improper dangerousness finding that led to an unlawful commitment to MDH.

f.    ORDER MDH to assess whether any provision of accommodations for a defendant's disability could mitigate or eliminate any risk of dangerousness and allow IST defendants equal access to pre-trial release.

g.    ORDER MDH to immediately release all IST adjudicated defendants who are not dangerous with or without the provision of accommodations and who are being held in pre-trial detention pending transfer to MDH for competency restoration if they have been awaiting transfer to MDH for longer than 10 days, with individualized community-based competency restoration plans that include any services and supports an incompetent criminal defendant may need to safely live in the community, achieve restoration of competency, and maintain competency throughout the pendency of their case.  The plan shall include, but not be limited to, the supports identified in Md. Code Ann., Crim. Proc.§ 3-108(a)(3).

h.    ORDER MDH to transfer every pre-trial detainee found incompetent to stand trial, restorable to competency, and whose conduct is found to be dangerous with accommodations, to an MDH facility within 10 days of being found IST and dangerous, or temporarily transfer them to private facility at the expense of MDH until a bed in an MDH facility becomes available.

i.    ORDER MDH to establish a community-based competency restoration program with wrap around services to facilitate access to competency

restoration services for individuals who have been found IST but not

dangerous.

77.     ORDER Defendants to pay all attorneys' fees and costs reasonably incurred by

Plaintiff in bringing of this action.

78.     ORDER all such other and further relief as this Court finds necessary or

appropriate in the interests of justice.


Dated: January 9, 2025                                    Respectfully submitted,

                                                         _____/s/_____
                                                         Luciene M. Parsley
                                                         Federal Bar No. 27089
                                                         Disability Rights Maryland
                                                         1500 Union Avenue, Suite 2000
                                                         Baltimore, MD 21211
                                                         LucieneP@disabilityrightsmd.org
                                                         (410) 727-6352
                                                         Fax: (410) 727-6389

                                                         _____/s/_____
                                                         Theodore A. Howard (application for
                                                         *pro hac vice* pending)
                                                         (signed by Luciene M. Parsley with
                                                         permission of Theodore A. Howard)
                                                         WILEY REIN LLP
                                                         2050 M Street, NW
                                                         Washington, DC 20036
                                                         Email: thoward@wiley.law
                                                         Telephone: (202) 719-7000

                                                         _____/s/_____
                                                         Kathleen Cooperstein (application for
                                                         *pro hac vice* pending)
                                                         (signed by Luciene M. Parsley with
                                                         permission of Kathleen Cooperstein)
                                                         WILEY REIN LLP
                                                         2050 M Street, NW
                                                         Washington, DC 20036
                                                         Email: kcooperstein@wiley.law
                                                         Telephone: (202) 719-4043

_____/s/_____
Ryan Downer (application for *pro hac
vice* pending)
(signed by Luciene M. Parsley with
permission of Ryan Downer)
Washington Lawyers Committee for
Civil Rights & Urban Affairs
700 14th Street, NW, Suite 400
Washington, DC 20005
Email: ryan_downer@washlaw.org
Telephone: (202) 319-1000