**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DISABILITY RIGHTS MARYLAND, INC., *Plaintiff*, | ) | |
| v. | ) | Case No. 1:25-cv-00070-JRR<br>Judge Julie R. Rubin |
| DR. LAURA HERRERA SCOTT, et al., *Defendants.* | ) | |

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Luciene M. Parsley
Fed. Bar No. 27089
Courtney Bergan
Fed. Bar No. 31410
DISABILITY RIGHTS MARYLAND
1500 Union Ave., Suite 2000
Baltimore, MD 21211

Ryan Downer (*pro hac vice*)
Chelsea Sullivan (motion for *pro hac vice* pending)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 Fourteenth Street, NW
Suite 400
Washington, DC 20005

Theodore A. Howard (*pro hac vice*)
Kathleen Cooperstein (*pro hac vice*)
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036

Attorneys for Plaintiff Disability Rights Maryland, Inc.

**TABLE OF CONTENTS**

INTRODUCTION ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 9

I. Plaintiff Has Standing to Bring ADA and Section 504 Claims. ..... 9

A. Plaintiff Asserts an Actual, Concrete, and Particularized Injury. ..... 10

B. Injury to IST-Adjudicated Defendants is Traceable to Defendants' Unlawful Conduct. 12

C. Defendants' Violations are Redressable by This Court as Established by Plaintiff's Requested Relief. ..... 14

II. Plaintiff Has Sufficiently Pled that MDH's Discriminatory Stereotyping and Failure to Provide Competency Services in the Most Integrated Setting Violates Title II of the ADA and Section 504 ..... 16

A. Supposed Absence of a Non-Disabled Comparator Group is Irrelevant. ..... 17

B. The Complaint Alleges Sufficient Facts to Support Allegations of Discriminatory Over-Designation of Dangerousness. ..... 20

C. The Complaint Sufficiently Alleges That Indefinite Detention of IST-Adjudicated Defendants Unjustly Segregates People with Disabilities and Violates *Olmstead*'s Integration Mandate. ..... 23

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate*,
469 U.S. 287 (1985)....................17

*Amundson ex rel. Amundson v. Wisconsin Dep't. of Health Servs.*,
721 F.3d 871 (7th Cir. 2013)....................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*Bone v. Univ. of N. Carolina Health Care Sys.*,
No. 1:18-CV-994, 2023 WL 4144277 (M.D.N.C. June 22, 2023)....................15

*Bruggeman v. Blagojevich*,
324 F.3d 906 (7th Cir. 2003)....................26

*Califano v. Yamasaki*,
442 U.S. 682 (1979)....................14, 15

*Christine S. v. Blue Cross Blue Shield of N.M.*,
No. 2:18-cv-00874, 2021 U.S. Dist. LEXIS 199330 (D. Utah Oct. 14, 2021)....................27

*City of Newark v. J.S.*,
652 A.2d 265 (N.J. Super. Law. Div. 1993)....................21

*Cornwell v. Sachs*,
99 F. Supp. 2d 695 (E.D. Va. 2000)....................14, 15

*Day v. Dist. of Columbia*,
894 F.Supp.2d 1 (D.D.C. 2012)....................25

*Disability Rights Md. v. Green, et al.*,
No. 21-cv-02959-JRR (D. Md. Sept. 1, 2022)....................9

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999)....................9

*Dunakin v. Quigley*,
99 F. Supp. 3d 1297 (W.D. Wash. 2015)....................25

*Fauconier v. Clarke*,
966 F.3d 265 (4th Cir. 2020) ....................17

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)....................13, 19

*Holloway v. Pagen River Dockside Seafood Inc.*,
669 F.3d 448 (4th Cir. 2012) ....................8

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................9

*Joseph S. v. Hogan*,
561 F. Supp. 2d 280 (E.D.N.Y. 2008) ....................25

*La Unión del Pueblo Entero v. Abbott*,
No. 5:21-CV-0844, 2025 U.S. Dist. LEXIS 48551 (W.D. Tex. Mar. 14, 2025)....................19

*Lindsay v. Navarretta*,
No. 3:22-CV-1518 (SVN), 2024 WL 5125954 (D. Conn. Dec. 16, 2024)....................24

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................9

*Martin v. Duffy*,
858 F.3d 239 (4th Cir. 2017) ....................8

*Mylan Lab'ys, Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993) ....................8

*Nat'l Fed'n of the Blind, Inc v. Wal-Mart Assocs., Inc.*,
566 F. Supp. 3d 383 (D. Md. 2021)....................9

*Nelson v. Milwaukee Cty.*,
No. 04C0193, 2006 U.S. Dist. LEXIS 7513 (E.D. Wis. Feb. 7, 2006) ....................22

*O'Connor v. Donaldson*,
422 U.S. 563 (1975)....................23

*Olmstead v. L.C. ex. rel. Zimring*,
527 U.S. 581 (1999).................... *passim*

*Or. Advocacy Ctr. v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ....................9

*Pa. Dept. of Corrections v. Yeskey*,
524 U.S. 206 (1998)....................12

*Pierce v. Cty. of Orange*,
526 F.3d 1190 (9th Cir. 2008) ....................25

*Schalk v. Associated Anesthesiology Prac.*,
316 F. Supp. 2d 244 (D. Md. 2004) ....................8

*Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*,
673 F.3d 333 (4th Cir. 2012) ....................17

*State of Conn. Office of Prot. and Advoc. for Persons with Disabilities v. State of Conn.*,
706 F. Supp. 2d 266 (D. Conn. 2010) ....................13, 24

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................15

*Thole v. U. S. Bank N.A.*,
590 U.S. 538 (2020) ....................9

*Timothy B. v. Kinsley*,
No. 1:22-cv-01046, 2024 U.S. Dist. LEXIS 57276 (M.D.N.C. Mar. 29, 2024) ....................9

*Wilson v. Thomas*,
43 F. Supp. 3d 628 (E.D.N.C. 2014) ....................9

*Youngberg v. Romeo*,
457 U.S. 307 (1982) ....................14, 23

**Statutes**

42 U.S.C. § 10805(a) ....................9

42 U.S.C. § 12114(b) ....................21

42 U.S.C. § 12131 ....................24

42 U.S.C. § 12132 ....................19

42 U.S.C. § 12210(b) ....................21

Md. Code Ann., Crim. Proc. § 3-105 .................... *passim*

Md. Code Ann., Crim. Proc. § 3-106 ....................7, 21

Md. Code Ann., Crim. Proc. § 3-108 ....................7, 26

28 C.F.R. § 35.130 ....................19, 24, 26

Fed. R. Civ. Pro. 12(b) ....................7

## INTRODUCTION

The Maryland Department of Health, and Secretary Laura Herrera-Scott in her official capacity (collectively, "Defendants"), inexcusably fail to meet their basic obligation to ensure individuals with disabilities deemed incompetent to stand trial promptly receive necessary and appropriate mental health services. Rather than being timely transported to an appropriate health care facility or released to the community to receive requisite competency restoration and treatment, these individuals all too frequently languish in jails unequipped to care for their needs. Defendants are responsible for providing these services in a timely manner under federal and state law. It is their failure to meet these obligations that is the impetus for the instant action.

Disability Rights Maryland ("DRM" or "Plaintiff") filed its Complaint against Defendants on January 9, 2025, alleging violations of law inflicted upon criminal defendants in the state of Maryland who have been deemed incompetent to stand trial and a potential danger to themselves or others ("IST"). Complaint, ECF No. 1 ("Compl."). Under the current statutory regime, Defendants are required to place IST-adjudicated defendants deemed dangerous into a designated health care facility within ten (10) days of receiving the Court's commitment order. IST-adjudicated criminal defendants who are found non-dangerous must be released from custody and MDH must create a report identifying how necessary services will be provided to them in the community. This Complaint alleges Defendants violated IST defendants' rights under the United States Constitution, the Maryland State Constitution Declaration of Rights, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), based on Defendants' failure to provide timely access to competency restoration services in the most integrated setting appropriate to the needs of these defendants, causing them to be detained in jails for a period of time that is, practically speaking, indefinite. Plaintiff further alleges that Defendants

appoint forensic examiners who discriminatorily stereotype IST-adjudicated criminal defendants based on their mental disabilities rather than an individualized inquiry into each IST-criminal defendants' conduct, thereby causing IST-adjudicated criminal defendants to be over-designated as dangerous and unjustly segregated.

On March 17, 2025, Defendants moved to dismiss Counts III-V of Plaintiff's Complaint, pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6).[1] Defendants' Motion to Dismiss challenges this Court's jurisdiction to hear Plaintiff's ADA and Section 504 claims for lack of standing and the sufficiency of Plaintiff's Complaint for failure to state claims under the ADA and Section 504 upon which relief can be granted. Mot. to Dismiss, ECF No. 19 ("MTD"). Neither ground warrants dismissal.

Plaintiff has affirmatively pled and stated claims under the ADA, 42 U.S.C. §§ 12131, *et seq*., and Section 504, 29 U.S.C. § 794. Plaintiff has stated a claim for which relief can be granted on all counts; Plaintiff has alleged a cognizable injury-in-fact and has standing to request declaratory and injunctive relief to redress the alleged injuries that arise from Defendants' breach of their statutorily mandated non-discretionary duties to properly evaluate criminal defendants for competency (Md. Code Ann., Crim. Proc. § 3-105(d)) and provide timely access to competency restoration services for all IST-adjudicated criminal defendants who are found dangerous. *See* Md. Code Ann., Crim. Proc. §§ 3-106, 3-108 (West). The Court has jurisdiction to hear all of Plaintiff's claims and therefore Defendants' Motion to Dismiss should be denied. Plaintiff respectfully requests this Court to rule accordingly.

## LEGAL STANDARD

[1] Defendants have not moved to dismiss Counts I or II of the Complaint. Those counts will be the subject of a contemporaneously filed Partial Motion for Default.

Defendants have brought their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). When a defendant challenges the sufficiency of a claim pursuant to Rule 12(b)(6), the court must assume the truth of all factual allegations made in the complaint and construe those allegations in favor of plaintiffs. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572, 592 (2007). A complaint need not set forth detailed factual allegations; rather it must only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss must be denied "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

While a 12(b)(6) motion challenges the sufficiency of the complaint, Rule 12(b)(1) addresses whether the court has the power to hear and dispose of the claim. Subject matter jurisdiction under Rule 12(b)(1) "is not generally resolved by concluding that the plaintiff has failed to allege an element of a federal cause of action or that the plaintiff might not be able to prove an element of a federal cause of action." *Holloway v. Pagen River Dockside Seafood Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). Rather the court must "look more fundamentally at whether the plaintiff's claim is determined by application of a federal law over which Congress has given the federal courts jurisdiction." *Id.* In resolving Defendants' Rule 12(b)(1) motion, the court must accept all well-pleaded allegations in plaintiff's complaint as true and "the plaintiff is essentially given the same procedural protection as he would have under a Rule 12(b)(6) motion." *Schalk v. Associated Anesthesiology Prac.*, 316 F. Supp. 2d 244, 247 (D. Md. 2004); *see also Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017).

## ARGUMENT

### I. Plaintiff Has Standing to Bring ADA and Section 504 Claims.

DRM has associational standing to bring claims under the ADA and Section 504 when its "members" experience violations of these laws. Compl. ¶ 4; *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977) (holding an association has standing to sue to redress its members' injuries, even when the association has not itself suffered injury). In this instance, as the federally mandated Protection and Advocacy organization for the State of Maryland, DRM is conferred authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C. § 10805(a). Courts have held that Protection and Advocacy organizations acting pursuant to this authority have associational standing to bring suit on behalf of those individuals. *See, e.g.*, *Nat'l Fed'n of the Blind, Inc v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 395 (D. Md. 2021), *appeal dismissed*, No. 21-2281, 2022 WL 1562162 (4th Cir. May 10, 2022); Transcript of Ruling on Motion to Dismiss at 7-20, *Disability Rights Md. v. Green, et al.*, No. 21-cv-02959-JRR (D. Md. Sept. 1, 2022) (ECF 110); *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014); *Timothy B. v. Kinsley*, No. 1:22-cv-01046, 2024 U.S. Dist. LEXIS 57276, at *27-31 (M.D.N.C. Mar. 29, 2024); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999). The only analysis remaining to this Court, then, is to determine whether those on whose behalf DRM is proceeding meet the traditional elements of Article III standing: (1) having experienced an injury in fact that is concrete, particularized, and actual or imminent; (2) that was caused by the Defendants; and (3) that would likely be redressed by the requested judicial relief. *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Each of these criteria is met here.

A. Plaintiff Asserts an Actual, Concrete, and Particularized Injury.

The IST-adjudicated persons DRM is representing are qualified individuals with disabilities and/or mental illness who have experienced the concrete and non-speculative injury of disability discrimination in violation of Title II of the ADA and Section 504 when they were deemed "dangerous" and segregated by Defendants in jails and detention facilities, without having been convicted of any crime, and without access to necessary rehabilitative services. That injury is compounded by the fact that many of these individuals were deemed dangerous solely on the basis of their diagnoses rather than their prognosis – meaning that a far higher number of IST-adjudicated defendants are in line for transfer to designated health care facilities than there should be, thus exacerbating the unconstitutional indefinite detention problem. These persons, legally unable to vindicate themselves at trial are deprived of accommodations that could mitigate dangerousness in more integrated settings, and are instead segregated to institutional settings, in violation of their civil rights and the black letter law as outlined in the Complaint.

Defendants confuse the examples of injured persons' experiences set forth in the Complaint with a comprehensive statement of their injuries. Defendants suggest that because an exemplar IST-adjudicated defendant was eventually returned to the community (only after being detained in jail for the maximum sentence of the charged offense despite not being convicted of any crime) that the Plaintiff can no longer show injury in fact. MTD at 13-14. Such reasoning misses the point entirely; while Plaintiff is pleased that the exemplar persons have finally been released from detention (only *after* Plaintiff's initial inquiries into the matters alleged in this lawsuit), the belated release of a few individuals does nothing to ameliorate the injuries already suffered by those individuals, let alone the ongoing harm inflicted upon the over 200 IST-adjudicated defendants still trapped in detention *today*. Compl. ¶ 25. Paragraphs 32-36 of the Complaint are illustrative

examples of the facts and circumstances experienced by DRM's members and provide the Defendant with notice of the substance of the claims asserted.

Defendants absurdly suggest that Plaintiff's constituents have not been injured under the ADA because "the ADA pertains to disabled individuals being denied services that non-disabled individuals receive," and since non-disabled defendants do not receive competency restoration services, the ADA does not entitle disabled defendants to the same. MTD at 9. This is like asserting that because hearing people can use spoken communication, Deaf people are not entitled to sign language interpreters under the ADA. Yet sign language interpreters are the quintessential communication accommodation under the ADA– and for very good reason. The ADA functions not to guarantee that everyone gets the same *things* but rather to guarantee that everyone has the same *opportunities*. Just as a Deaf criminal defendant has a right to receive the auxiliary services needed to communicate with their attorney and participate in their own defense, so too does an IST-adjudicated defendant have a right to receive auxiliary services needed in order for that person to understand the nature and substance of charges against them and participate in their own defense. Without competency restoration services that are tailored to the individual needs of IST-adjudicated criminal defendants, that right cannot be fulfilled for many criminal defendants with mental and/or developmental disabilities. Being warehoused in jails rather than in community-based treatment programs or designated health care facilities denies IST-adjudicated defendants the opportunity to participate in their own defense in the way their non-disabled peers do.

Plaintiff has plausibly alleged an actual, concrete and particularized injury resulting from violations of federal statutory rights under Title II of the ADA and Section 504 experienced by the IST-adjudicated defendants on behalf of whom this case is brought, thus conferring standing to obtain both declaratory and injunctive relief under Article III of the U.S. Constitution.

B. Injury to IST-Adjudicated Defendants is Traceable to Defendants' Unlawful Conduct.

Defendant Maryland Department of Health ("MDH") injures IST-adjudicated defendants every time it improperly opines that a person is IST and dangerous based upon stereotypes (frequently on the basis of little more than the diagnosis of mental illness) and without any consideration of accommodations that would mitigate dangerousness in a more integrated setting than a detention center or hospital. As a public entity that provides forensic evaluations, custodial care, and community-based psychiatric treatment to IST-adjudicated criminal defendants, MDH is subject to the ADA's and Section 504's integration mandate and other provisions. *Pa. Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998); *Olmstead v. L.C. ex. rel. Zimring*, 527 U.S. 581, 592 (1999). That integration mandate is of critical importance here, where Defendants consistently neglect their duty to provide IST-adjudicated defendants care and treatment in integrated settings, defaulting instead to the ill-equipped and absolutely isolating correctional detention system. *Olmstead*, 527 U.S. at 597, 607.

Defendants contend that they cannot be responsible for the IST-adjudicated defendants' predicament because it is judges who order defendants to be committed. MTD at 6-7. Again, Defendants have missed—or consciously obfuscated—the point. In the series of events leading up to the IST-adjudicated defendants' injury, the judiciary plays a role in only one, while Defendants are involved at every other step along the way. Maryland law explicitly identifies Defendants' responsibility to assess and opine on dangerousness as part of the competency evaluation process. Md. Code Ann., Crim. Proc. § 3-105(d) (West) ("If the Health Department reports that, in its opinion, the defendant is incompetent to stand trial, the report shall state, in a complete supplementary opinion, whether, because of a mental disorder or an intellectual disability, the defendant would be a danger to self or the person or property of another, if released."). Maryland law makes it clear that MDH has a non-discretionary obligation to assess

dangerousness, and it is the sole entity tasked with this responsibility. *Id.* Plaintiff alleges that Defendants' appointed competency examiners engage in a discriminatory practice of unlawful stereotyping when assessing whether IST-adjudicated criminal defendants would be dangerous if released. Given MDH's statutory charge and expertise, judges typically grant significant deference to the professional opinions of MDH examiners, issue an order consistent with MDH's recommendation, and commits IST-adjudicated criminal defendants to MDH's custody. MDH should then actually take custody and admit the defendant to an approved health care facility for competency restoration services – instead, as alleged in the Complaint, MDH frequently leaves defendants in jail without access to those services. The proverbial ball has been tossed by the judge back into Defendants' court, where they are content simply to consistently drop that ball and walk away from it.

Plaintiff does not allege that Defendants' actions are the sole cause of pre-trial detention but rather alleges that Defendants discriminate on the basis of disability and use methods of administration that *disproportionally impact* people with disabilities.[2] Compl. at 20. Defendants' disability discrimination is an independent violation of IST-adjudicated defendants' civil rights under Title II of the ADA and Section 504 that is distinct from courts' commitment decisions, which are not challenged by Plaintiff. Compl. ¶¶ 56-64. Defendants' disability discrimination begins with MDH-appointed forensic examiners depriving competency evaluees of disability accommodations resulting in an over-designation of criminal defendants with disabilities deemed

[2] Defendant incorrectly states that discrimination must be *solely* on the basis of disability. Under the ADA, plaintiffs are only required to prove discrimination on the basis of disability and there is no requirement for plaintiff to show that discrimination is *solely* on the basis of disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279-80 (2d Cir. 2003) (holding that the plaintiffs have demonstrated that their disabilities are a cause of the denial of access to benefits under the ADA when disability-related challenges are identified as making access more difficult for people with disabilities); *see also State of Conn. Office of Prot. and Advoc. for Persons with Disabilities v. State of Conn.*, 706 F. Supp. 2d 266, 275 (D. Conn. 2010).

both IST and dangerous (frequently without regard to the defendant's actual conduct), and ends with MDH failing to provide requisite care in the most integrated setting available to those same individuals who remain incarcerated *because of MDH*. Regardless of courts' ultimate dangerousness findings, MDH is the sole entity tasked with performing dangerousness assessments and MDH creates these reports with knowledge that their professional opinions will form the basis of the court record that judges must rely upon when rendering a dangerousness finding.[3] Md. Code Ann., Crim. Proc. § 3-105 (West). Thus, Defendants' conduct is the direct cause of Plaintiff's claimed statutory injury arising from violations of Title II of the ADA and Section 504.

The IST-adjudicated defendants' injuries alleged in the Complaint are directly traceable to the Defendants' disability discrimination that arises from discriminatory stereotyping, denials of disability accommodations, and methods of administering services that tend to prevent criminal defendants with disabilities who are adjudicated IST from accessing services in the most integrated setting available.

C. Defendants' Violations are Redressable by This Court as Established by Plaintiff's Requested Relief.

Plaintiff's requested relief would remedy Defendants' ongoing violations of the ADA and Section 504. While Defendants contend that the relief requested is so broad as to defeat standing, the breadth of relief sought is exactly proportional to the harm Defendants have caused. The cases cited by Defendants do nothing to advance their argument on this point. Defendants cite *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) and *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 714 (E.D. Va.

[3] Supreme Court precedent requires courts to rely upon professional opinions before them. *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982) (holding professional judgment is presumptively valid and courts must show deference to the judgment exercised by a qualified professional unless the decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment).

2000) (sic), for the proposition that the "scope of the relief sought by Plaintiff fails the redressability test," but neither *Yamasaki* nor *Cornwall* support this proposition in the context of standing. MTD at 7. In *Cornwall*, 99 F. Supp. 2d at 713, the quoted text is used to support limiting the scope of a preliminary injunction requested and in *Yamasaki*, 442 U.S. at 702, the quoted text supports the geographic scope of the plaintiff class. *Id*. ("Nor is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.") Likewise, *Bone v. University of North Carolina Health Care System*, No. 1:18-CV-994, 2023 WL 4144277 (M.D.N.C. June 22, 2023) supports narrowing the scope of a permanent injunction when the scope of the relief requested is broader than the extent of the violation established, not dismissal of the case for lack of standing.

An injury is redressable for the purposes of standing when a party claims a concrete and particularized injury that can be remedied by a court issuing a favorable judicial decision or granting the relief requested. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 105-06 (1998) ("None of the specific items of relief sought, and none that we can envision as "appropriate" under the general request, would serve to reimburse respondent for losses caused by the [claimed statutory violation], or to eliminate any effects of that [statutory violation] upon respondent."). Plaintiff's requested relief would remedy the claimed injuries caused by Defendants' violation of the ADA and Section 504, by requiring Defendants to provide requested reasonable modifications to their policies and practices for competency evaluations and services; this relief would redress their discriminatory stereotyping and unlawful segregation. Defendants complain that Plaintiff's requested relief "for any accommodations necessary" to ensure equal access to the competency evaluation process or to require MDH to re-evaluate current detainees to confirm whether they are

truly dangerous is over-broad. MTD at 7-8. However, Defendants do not state why these requested remedies are inappropriate beyond conclusory assertions that such remedies are inconsistent with the Department's legal obligations and authority under the Criminal Procedure Article. Such statements are curious, given that the requested relief merely requires Defendants to comply with their existing legal obligations. Compl. ¶¶ 76.e. and 76.c. ("*i.e.*, could any supports or services mitigate a dangerousness finding to allow for pre-trial release and community-based competency restoration?"). Moreover, the remedy in Paragraph 76.e. of Plaintiff's complaint is narrowly tailored to cover only those who are already in pre-trial detention and awaiting transfer to MDH to assess whether any of these IST-adjudicated defendants could be provided treatment in a more integrated setting. Thus, both requested remedies are appropriately tailored to remedy Defendants' unlawful conduct and merely require Defendants to perform their legally mandated responsibilities.

The actual, concrete, and particularized injuries alleged in the Complaint are caused by Defendants' unlawful conduct and can be remedied if this Court grants the requested relief against Defendants. Therefore, Defendant's motion to dismiss for lack of standing must be denied.

## II. Plaintiff Has Sufficiently Pled that MDH's Discriminatory Stereotyping and Failure to Provide Competency Services in the Most Integrated Setting Violates Title II of the ADA and Section 504.

Plaintiff plausibly alleges that Defendants have denied IST-adjudicated defendants equal access to pre-trial release and competency restoration in the most integrated setting by discriminating based on stereotypes and failing to provide reasonable accommodations for IST-adjudicated defendants in an appropriate setting, in violation of Title II of the ADA and Section 504.

Both the ADA and Section 504 claims require that Plaintiff allege the same three elements: (1) that the plaintiff has a disability or has been regarded as having a disability; (2) that they are

otherwise qualified to receive the benefits provided by a public entity; and (3) that they were denied those benefits or was otherwise discriminated against on the basis of their disability. *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) (quoting *Doe v. Univ. Of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995).[4] Each of those three requirements is satisfied by the Complaint here. Plaintiff is *not* required to plead the discrimination is intentional; it is sufficient to allege the denial of benefits due to "thoughtlessness and indifference," that is, from "benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985); *see* H.R. Rep. No. 101-485 (II) at 29 (1990).

The Defendants do not contest that the Complaint properly alleges the first two prongs – that IST-adjudicated defendants are individuals with disabilities who are qualified to receive competency restoration services. Rather, Defendants center their Motion on the third element. *See* MTD at 10. They contend that (1) Plaintiff's ADA claim fails because competency restoration services are only provided to individuals with disabilities and there is no non-disabled comparator group; (2) Plaintiff has failed to allege sufficient facts pertaining to Defendants' discriminatory dangerousness assessments; and (3) the requirement to provide services in the most integrated setting appropriate, as required by Title II of the ADA, does not apply when transferring individuals with disabilities from one institutional setting to another. MTD at 8-14. These arguments incorrectly disregard and/or misconstrue the plausible allegations of the Complaint.

A. Supposed Absence of a Non-Disabled Comparator Group is Irrelevant.

Plaintiff is not required to identify a comparator group to state its claims here. See *Olmstead*, 527 U.S. at 598 (holding that proving disability discrimination does not require identifying a "comparison class . . . of similarly situated individuals given preferential treatment"

[4] Unless otherwise specified, Plaintiff's references to the ADA should be read to encompass its Section 504 claims as well.

because "Congress had a more comprehensive view of the concept of discrimination advanced in the ADA"). The Defendants argue that Plaintiff fails to state a claim because the ADA only "pertains to disabled individuals being denied services that non-disabled individuals receive." MTD at 9 (citing a New York State trial court decision). In the Defendants' narrow and limited view, there cannot be an ADA violation in failing to provide competency restorative services to IST-adjudicated defendants, because competency restorative services are not provided to non-disabled individuals. *Id.* As noted above in Section I.A, this contention flies in the face of the very basic principles of the ADA, which frequently (and intentionally) requires accommodations for disabled individuals that non-disabled individuals do not need – so that both groups may participate equally in society. The out-of-circuit cases cited in Defendants' motion pertain to situations where the alleged discrimination was unrelated to an individual's disability, thereby undercutting any allegation of unlawful discrimination under the ADA. *See* MTD at 9-10.

In contrast, the Plaintiff alleges that IST detainees are denied, *on the basis of their disability*, the benefit of appropriate competency evaluation and pre-trial release. Compl. ¶¶ 62-63. The Plaintiff properly alleges that Defendants are discriminating against IST-adjudicated defendants on the basis of their disabilities by over-designating those defendants as dangerous, failing to make reasonable accommodations in the competency assessment process and provision of community-based competency restoration resources, and failing to facilitate placement in the most integrated setting available, subjecting them instead to indefinite periods of jail detention without necessary services. Compl. ¶¶ 61-64. Non-disabled criminal defendants who have been accused of similar types of criminal offenses are generally afforded pre-trial release, and even if they are subject to pre-trial detention, they are able to participate in their own defense from that setting. Non-disabled criminal defendants are entitled to speedy trial dates, discovery, *Brady*

disclosures, and have the right to compel witnesses to testify in court. IST-defendants cannot even be given a trial date until MDH deems their competency restored. Yet, when denied pre-trial release or appropriate treatment in the least restrictive setting, the opportunity to be restored to competency is virtually nil. To say the loss of the benefit of constitutional protections is unrelated to their disability is absurd.

Additionally, the Defendants' argument is at odds with the plain text of Title II and its implementing regulations. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II prohibits discrimination by public entities against people with disabilities by reason of their disabilities and does not distinguish between public entity actions that only serve people with disabilities versus those that serve the general public. *Id.* Likewise, the relevant Title II implementing regulations mandate opportunities for people with disabilities that are equal to those afforded to or provided to "others," not just "others without disabilities." 28 C.F.R. §§ 35.130(b)(1)(iii)-(iv); *see Olmstead*, 527 U.S. at 598; *see also Henrietta D.*, 331 F.3d at 276 (holding that plaintiffs do not need to identify a "comparison class" and that a plaintiff can prevail on ADA claims either by showing "discrimination" or by showing "deni[al of] the benefits" of public services) (quoting *Olmstead*, 527 U.S. at 598; 42 U.S.C. § 12132); *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844, 2025 U.S. Dist. LEXIS 48551, at *141 (W.D. Tex. Mar. 14, 2025) (holding that discrimination under Title II of the ADA "does not require comparison to similarly situated individuals without disabilities.").

B. The Complaint Alleges Sufficient Facts to Support Allegations of Discriminatory Over-Designation of Dangerousness.

Defendants assert that Plaintiff's ADA claims relating to their over-designation of dangerousness in IST-adjudicated defendants are vague and detached from Maryland's statutory provisions, but completely miss the thrust of Plaintiff's allegations. MTD at 10. Plaintiff alleges that MDH over-designates IST-adjudicated defendants as dangerous based upon stereotypes that mental disorders, such as mental illness, necessarily equate to dangerousness without individualized assessment of a particular person's behavior. Compl. ¶¶ 27, 62. Defendants counter that the Maryland statute itself requires the assessment be based on the existence of mental disorder or intellectual disability rather than an individualized inquiry into dangerous behavior, but the definition of the mental disorder element is used to identify individuals who are within a class that qualifies for competency restoration services – *not* to identify individuals who should be deemed dangerous. MTD at 10; Md. Code Ann., Crim. Proc. § 3-105(d)(3); *see* David D. Doak, Theorizing Disability Discrimination in Civil Commitment, 93 Tex. L. Rev. 1589, 1611 (2015) ("[A] commitment decision is discriminatory . . . when it is based on prejudice or stereotypes. This principle is intuitive because it comports with normative understandings of discrimination as rooted in prejudice.").

Allowing stereotypes to justify adverse treatment would render the ADA and Section 504 functionally meaningless and would sanction prejudice in our society. As the Supreme Court explained in *School Board. of Nassau County., Florida. v. Arline*, "[s]ociety's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." 480 U.S. 273, 284 (1987). To comply with the ADA and Section 504, Defendants must conduct an individualized inquiry to assess whether one's disability results in an actual danger to themselves or the person or property of another *and* consider whether any

reasonable accommodation could mitigate that danger. *Arline*, 480 U.S. at 287; *City of Newark v. J.S.*, 652 A.2d 265, 273-74 (N.J. Super. Law. Div. 1993) ("for government to try to confine someone based upon his or her illness alone is as wrongful an act of discrimination as denying him or her a service from government. If public entities are barred from subjecting disabled persons to discrimination, can it be seriously doubted but that they are barred from involuntarily confining them?").

Dangerousness must be derivative of a mental disorder *and* determined based upon an individualized inquiry into one's conduct; to say otherwise would conflate the two stages of assessment (competency evaluations and dangerousness evaluations) and obviate much of the rule. An individual must have both a mental disorder and demonstrate dangerous conduct that is derivative of their mental disorder in order to be subjected to involuntary commitment to a designated health care facility. Md. Code Ann., Crim. Proc. § 3-106(c)(1)(i). Under Defendants' view, an individual with a mental disorder or intellectual disability would be automatically denied pre-trial release on the basis of their disability—exactly in violation of the ADA.

Defendants' suggestion that Plaintiff fails to allege any specific instances of stereotyping and over-designation is simply incorrect. *See* MTD at 10-12. The case of J.H., recounted in the Complaint at Paragraph 35, is one such specific example. In that illustrative exemplar, MDH swiftly deemed the IST-adjudicated defendant dangerous, in direct contravention of a judge's determination just one month prior, despite no notable change in conduct.[5] Compl. ¶ 35. The Complaint alleges the identical findings as to J.H's dangerousness across MDH reports over a year

[5] Defendants emphasize substance abuse as if to suggest this would exempt J.H from coverage under the ADA. While Plaintiff clearly establishes that the evaluator's reliance on J.H.'s illegal drug use was erroneous (Compl. ¶ 35), Plaintiff also notes that history of substance use is a disability protected under the ADA. *See* Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12114(b), 12210(b) (1990).

apart suggest these findings were simply cut and pasted based on J.H.'s prior diagnosis and history, rather than whether J.H. was actually dangerous at the time of the report. *Id*. In another alleged example of arbitrary designation without a contemporaneous behavioral assessment, IST-adjudicated defendant T.D. was initially assessed to be dangerous in May 2024; within the same month, MDH changed his evaluation from dangerous to non-dangerous without any further evaluation of T.D. Compl. ¶ 36. Both T.D.'s and J.H.'s arbitrary dangerousness assessments support Plaintiff's allegations that Defendants' dangerousness determinations are unreasoned and based upon impermissible stereotypes of their disabilities.[6]

Finally, the Defendants contend that they cannot have discriminated by assuming certain types of mental disorders are dangerous, while others are not – because the ADA holds no power over discrimination between two groups of disabled individuals. MTD at 10. This is a misstatement of the Plaintiff's argument, and it is also legally incorrect. *See Olmstead*, 527 U.S. at 598 n.10 (approving of intraclass discrimination claims in disability discrimination cases); *Amundson ex rel. Amundson v. Wisconsin Dep't. of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013) (holding that a claim under Title II is cognizable even if comparing members with differing disabilities); *Nelson v. Milwaukee Cty.*, No. 04C0193, 2006 U.S. Dist. LEXIS 7513, at *22-23 (E.D. Wis. Feb. 7, 2006) ("[T]o the extent that plaintiffs allege that defendants are treating them worse than persons with less severe disabilities, they may proceed as such claims allege differential treatment by reason of disability."). Furthermore, the Complaint makes no allegation that only certain types of disabilities are subjected to discrimination by Defendants. To be clear, Plaintiffs

[6] Defendants' practices of over-designating IST-adjudicated defendants as dangerous are further substantiated in a public report finding that as many as 97% of IST-adjudicated defendants are opined to be dangerous. W. Lawrence Fitch, Forensic Mental Health Services in the United States, Nat'l Assoc. State Mental Health Prog, Directors 12 (2014) ("A few states require that defendants meet criteria approximating ordinary civil commitment criteria. Note that in at least one such state, however, the vast majority of IST defendants (97%) are committed nonetheless (MD). Staff there report that many of these defendants would not be committed in ordinary civil commitment proceedings, suggesting the additional criteria are not always strictly applied").

allege wholesale discrimination of a substantial majority of IST-adjudicated defendants by MDH through its pervasive and consistent refusal to provide reasonable accommodations and administer services in the most integrated settings available. As one element of this systemic deprivation of rights, Plaintiff alleges that IST-adjudicated defendants are discriminated against as compared to non-IST adjudicated criminal defendants when MDH-appointed forensic examiners deem them dangerous based on their diagnosis, rather than their conduct. Compl. ¶¶ 61-62.

C. The Complaint Sufficiently Alleges That Indefinite Detention of IST-Adjudicated Defendants Unjustly Segregates People with Disabilities and Violates *Olmstead*'s Integration Mandate.

In passing the ADA, Congress determined that "[i]nstitutional placement of persons [with disabilities] who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Olmstead*, 527 U.S. at 583 (quoting 42 U.S.C. §§ 12101(a)(2), 12101(a)(5)). Plaintiff properly alleges a violation under this principle (called an "*Olmstead*" claim) under two discreet theories: (1) Defendants use methods of administering competency evaluation and restoration services that discriminate on the basis of disability having the effect of unnecessarily segregating IST-adjudicated criminal defendants in institutional settings (Compl.¶ 67); and (2) Defendants unnecessarily segregate IST-adjudicated criminal defendants in overly restrictive and isolated environments when they fail to provide timely access to competency restoration services in the most integrated setting appropriate to individual's needs. (Compl. ¶ 66).

Segregation in an institution is only justified where it is essential to meet the person's treatment needs and there is no appropriate community setting. Where an individual is institutionalized in a dangerous environment and essential mental health care is not provided, the balance of considerations must shift in favor of community-based and integrated treatment options. *See, e.g., Youngberg,* 457 U.S. at 317; *O'Connor v. Donaldson*, 422 U.S. 563 (1975). Yet, as

alleged in the Complaint, Defendants consistently place IST-adjudicated defendants in a maximally segregated correctional environment, both dangerous and lacking in essential mental health care.

Defendant erroneously asserts that *Olmstead* does not apply to cases where IST-adjudicated defendants are opined to be dangerous, such as in the case of M.H. and J.H. MTD at 12-13. Under the ADA, an individual is "qualified" to receive services when they meet the *essential eligibility requirements* "with or without reasonable modifications to rules, policies, or practices." 42 U.S.C. § 12131(2). An *Olmstead* claim can be established when a public entity applies eligibility criteria in a way that that tends to screen out people with disabilities from obtaining community-based services. *State of Conn. Off. of Prot. & Advoc. for Persons with Disabilities v. State of Conn.*, 706 F. Supp. 2nd 266, 276 (D. Conn. 2010); *Lindsay v. Navarretta*, No. 3:22-CV-1518 (SVN), 2024 WL 5125954, at *12 (D. Conn. Dec. 16, 2024) (finding a valid *Olmstead* methods of administration claim based on allegation that the state's "failure to reasonably modify policies, practices, and procedures to require contracted community providers to use nondiscriminatory eligibility criteria"). Title II of the ADA and its implementing regulations prohibit public entities from using criteria or methods of administration "that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" or have the "purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. §§ 35.130(b)(3)(i),(ii). A methods of administration claim extends beyond formal polices to include "the actual practices of the public entity." 28 C.F.R. § 35.130.

A state treatment professional opining that an individual is eligible for community-based services is not necessary to establish a methods of administration claim under *Olmstead*. The

threshold question revolves around Defendants' *practices of determining eligibility* for community based services rather than whether Defendants are providing access to services in the most integrated setting available to those it has already found eligible for community-based services. *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 291 (E.D.N.Y. 2008) ("it is not clear whether *Olmstead* even requires a specific determination by any medical professional"); *Day v. Dist. of Columbia*, 894 F.Supp.2d 1, 22–23 (D.D.C. 2012) (holding that to state a claim under the ADA or Section 504, it was sufficient to allege that the District provided the existing system through which the plaintiffs received services and, in so doing, had utilized criteria that had caused the plaintiffs to be confined unnecessarily in order to obtain those services); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) (holding plaintiff validly stated an *Olmstead* claim by alleging that the State failed to evaluate him for community based services). Plaintiff alleges that Defendants' practices of administering competency evaluation and restoration services effectively deny IST-adjudicated defendants' opportunities to participate in community-based competency restoration when it improperly stereotypes IST-adjudicated defendants as dangerous and fails to consider whether reasonable accommodations could mitigate IST-adjudicated defendants alleged dangerous conduct in a more integrated setting. Compl. ⁋ 67.

Defendants further argue that Plaintiff's *Olmstead* claim fails because dangerous IST-adjudicated individuals are ineligible for treatment in less restrictive environments, and "moving an IST individual from a detention center to a State psychiatric hospital is moving an individual from one institutional setting to another." MTD at 13. However, one's right to treatment in the most integrated setting available is not limited to community settings. Defendant's argument fails to consider that the most integrated setting for IST-adjudicated defendants deemed dangerous also includes the least restrictive environment within an institution. *See, e.g., Pierce v. Cty. of Orange*,

526 F.3d 1190, 1221 (9th Cir. 2008) (finding unnecessary segregation within a jail as a result of the jail's failure to accommodate detainees' disabilities).

As identified in Plaintiff's Complaint, IST-adjudicated defendants in jails are often maintained in solitary confinement because jails are unequipped to safely manage their symptoms of severe mental illness; Plaintiff has observed IST-defendants in such situations being deprived of clothing and belongings, isolated, and unable to access mental health treatment. Compl. ¶ 33. Delays in the provision of competency restoration services, in conjunction with the poor conditions in which IST-adjudicated defendants are detained, may cause them to deteriorate, requiring longer periods of institutionalization. *Id.* ¶¶ 32, 33.

Defendants' *Olmstead* failures as alleged are not limited to dangerous (or rather, deemed dangerous) IST-adjudicated defendants. Plaintiff has also sufficiently alleged that IST-adjudicated defendants found non-dangerous, who are eligible for community-based services, have been denied those services by Defendants. Compl. ¶¶ 31, 36, 66. For example, Defendants' treatment professionals determined that exemplar T.D. could be safely provided with supports and services in a community setting. Compl. ¶ 36. Yet, T.D. was stuck in a detention center for more than five months because Defendants failed to create a plan of services for community-based support.[7] *Id.*

Defendant attempts to differentiate "least restrictive environment" from *Olmstead*'s integration mandate, but the ADA plainly requires that persons with disabilities be provided services in the least restrictive environment consistent with their needs. 28 C.F.R § 35.130(d); *see Bruggeman v. Blagojevich*, 324 F.3d 906, 911 (7th Cir. 2003) (superseded by statute on other grounds) ("[B]oth [the Rehabilitation Act] and the Americans with Disabilities Act entitle disabled

[7] T.D. was initially committed to MDH as IST and dangerous on May 20, 2024. He was never transferred to an MDH facility as required, and later characterized as *not* dangerous in a subsequent MDH opinion; yet MDH failed to create a plan for services as required by Md. Code Ann., Crim Proc § 3-108(a)(2).

persons (as the plaintiffs undoubtedly are) to care in the least restrictive possible environment"); *Christine S. v. Blue Cross Blue Shield of N.M.*, No. 2:18-cv-00874, 2021 U.S. Dist. LEXIS 199330 at *27 (D. Utah Oct. 14, 2021) ("In disability law—including in the mental health context — 'least restrictive' is simply another way of indicating that the individual is at the most appropriate level of care—i.e. care that allows them the most mainstream experience possible."). Plaintiff alleges that IST-adjudicated detainees are maintained in unnecessarily segregated conditions within detention centers because Defendants fail to accommodate such detainees in more integrated settings. IST-adjudicated defendants cannot receive the most appropriate level of care under such conditions. IST detainees require essential mental health care and/or disability supports, and their needs are not met when they are locked up indefinitely in local jails and detention centers without access to any competency restoration services. Defendants' refusal to meet these needs in the most integrated setting available and discharge their statutory, constitutional, and human obligations towards these IST-defendants has been pled with more than sufficient detail to survive Defendants' Motion to Dismiss.

## CONCLUSION

For the reasons stated, the Defendants' Motion should be denied.

Dated: March 31, 2025

Respectfully submitted,

*/s/ Luciene M. Parsley*

Luciene M. Parsley
(signed by Kathleen Cooperstein with permission of Luciene M. Parsley)
Federal Bar No. 27089
Disability Rights Maryland
1500 Union Avenue, Suite 2000
Baltimore, MD 21211
LucieneP@disabilityrightsmd.org

Tel: (410) 727-6352
Fax: (410) 727-6389

/s/ *Courtney A. Bergan*
Courtney A. Bergan
(signed by Kathleen Cooperstein with permission of Courtney A. Bergan)
Federal Bar No. 31410
Disability Rights Maryland
1500 Union Avenue, Suite 2000
Baltimore, MD 21211
courtneyb@disabilityrightsmd.org
Tel: (410) 727-6352
Fax: (410) 727-6389

*/s/ Theodore A. Howard*
Theodore A. Howard (pro hac vice)
(signed by Kathleen Cooperstein with permission of Theodore A. Howard)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
thoward@wiley.law
Tel: (202) 719-7000
Fax: (202) 719-7049

*/s/ Kathleen Cooperstein*
Kathleen Cooperstein (pro hac vice)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
kcooperstein@wiley.law
Tel: (202) 719-7000
Fax: (202) 719-7049

*/s/ Ryan Downer*
Ryan Downer (pro hac vice)
(signed by Kathleen Cooperstein with permission of Ryan Downer)
Washington Lawyers Committee for Civil Rights & Urban Affairs
700 14th Street NW, Suite 400
Washington, DC 20005
ryan_downer@washlaw.org

Tel: (202) 319-1000
Fax: (202) 319-1010

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2025, a copy of the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, along with the associated proposed order, were filed electronically pursuant to the procedures established by the United States District Court for the District of Maryland, which serves all counsel of record electronically via the Court's CM/ECF system.

*/s/ Kathleen Cooperstein*

Counsel for Plaintiff